IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GLENANN L. YAHNKE,

                                              OPINION AND ORDER

               Plaintiff,

                                     14-cv-315-bbc

       v.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Disagreeing with the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, to deny a part of her claim for disability insurance benefits and supplemental security income under the Social Security Act, plaintiff Glenann L. Yahnke has moved for remand of the entire case. If the motion is granted, it would be the third time that the case has been sent back to the commissioner. It was remanded twice before: once by stipulation of the parties (case no. 07-cv-344-bbc) and again by this court in case no. 11-cv-368-bbc after defendant failed to carry out the instructions in the first remand. Because the commissioner had previously found plaintiff disabled as of March 13, 2009, the only issue in this case for the administrative law judge to resolve was whether plaintiff was disabled between the alleged onset date of her disability, June 2, 2003, and March 13, 2009. Administrative Law Judge Thomas Sanzi concluded that she was not.

1

Plaintiff contends that the administrative law judge erred in two respects: (1) he did not provide good reasons for his credibility finding; and (2) he improperly rejected the limitations assessed by her treating physician, Dr. David Ringdahl, in favor of those assessed by the state agency physician. Because I conclude that the administrative law judge did not give an adequate explanation of his reasons for rejecting the limitations assessed by plaintiff's treating physician in favor of the opinion of the state agency reviewing physician, it is necessary to remand this case for a third time.

The following facts are drawn from the administrative record:

RECORD EVIDENCE

A.  Procedural History

Plaintiff filed an application in 2004 for disability insurance benefits and supplemental security income under the Social Security Act, claiming that she was disabled because she had severe degenerative joint disease of both knees, a knee replacement in her right knee, osteoarthritis, disorders of the back, depression, anxiety and obesity. AR 1086. Her application was denied initially and again upon reconsideration. Plaintiff requested a hearing, which was held on August 31, 2006, before Administrative Law Judge John H. Pleuss, who found plaintiff not disabled. Id. On June 22, 2007, plaintiff filed suit in this court seeking judicial review of the adverse decision. Case no. 07-cv-344-bbc. Before the court had taken any action, the parties agreed that a remand was appropriate and filed a stipulation to that effect with the court. Id. at dkt. #13. In reliance on that stipulation, I

entered final judgment for plaintiff, reversed the decision of the commissioner and remanded the case for further administrative proceedings. Among other things, I directed the administrative law judge to reassess plaintiff's residual functional capacity and "clearly define[] the specific frequency of [plaintiff's] need to alternate sitting and standing per Social Security Ruling 96-9p." Id. at dkt. #14.

After remand, the medical record was updated with new reports from plaintiff's primary physician, Dr. David Ringdahl. On June 2, 2009, a new hearing was held before Administrative Law Judge Pleuss, AR 1086, who issued a written decision on August 19, 2009, finding that plaintiff had not been disabled within the meaning of the Social Security Act at any time through December 31, 2006, the date on which she had last been insured. AR 616, 621-22. He determined that plaintiff suffered from the severe impairments of osteoarthritis in both knees. status post right knee replacement; degenerative disc disease of the lumbar spine; and obesity. With respect to plaintiff's residual functional capacity, he found that before she turned 50 years old on March 13, 2009, she could perform sedentary work but could not stand for more than 30 minutes at a time. AR 618. Contrary to the instructions in the remand order, the administrative law judge never made any determination of the frequency with which plaintiff would have to change from sitting to standing or back and never asked the vocational expert about the availability of jobs for a hypothetical individual who had to alternate sitting and standing. Dkt. #20, case no. 11-cv-368-bbc. As a result, on February 27, 2012, I reversed the decision of the commissioner and

remanded the case for further administrative proceedings in accordance with the earlier order of remand.  Id.

A third hearing was held in plaintiff's case before Administrative Law Judge Sanzi on March 26, 2013.  AR 1100.  In a written decision issued on June 3, 2013, the administrative law judge incorporated the commissioner's previous findings with respect to plaintiff's severe impairments.  AR 1091.  However, he reached a different conclusion with respect to her residual functional capacity, finding that between June 2, 2003 and March 12, 2009, plaintiff could perform sedentary work with the following limitations:  the option to "sit and stand alternatively at will provided she was not off task more than 10 percent of the work period"; no kneeling, crawling or climbing ladders, ropes or scaffolds; occasional stooping, crouching and climbing ramps or stairs; no exposure to extreme cold and heat or wetness and humidity; no exposure to irritants such as odors, fumes, dusts or gases; no use of moving machinery or exposure to unprotected heights.  AR 1092-93.  Relying on the testimony of a vocational expert, the administrative law judge found that before turning 50 years old on March 13, 2009, plaintiff was able to perform work as a production inspector, production worker, office clerk and information clerk.  AR 1099.

### B.  Relevant Medical History

Between 2005 and 2009, plaintiff's treating physician, Dr. Ringdahl, provided three assessments of plaintiff's limitations.  In treating medical source statement questionnaires completed on March 4, 2005 and August 17, 2006, Dr. Ringdahl noted that with normal

4

breaks, plaintiff could stand and walk no more than two hours in an eight-hour workday and sit up to six hours. AR 463, 546. He also noted that plaintiff should elevate her legs 12 to 18 inches while sitting. Id. Dr. Ringdahl stated that plaintiff could not lift more than 10 pounds and needed to change position at various intervals. Id. He stated that he based these findings on magnetic resonance imaging studies of plaintiff's lumbar spine. AR 464, 547. In a musculoskeletal questionnaire dated January 25, 2009, Dr. Ringdahl said that plaintiff could lift and carry 10 pounds frequently and stand, walk and sit up to four hours in a workday. He based his findings on an evaluation of plaintiff's range of motion and 2004 magnetic resonance imaging studies. AR 937-38. The form did not ask about plaintiff's need to elevate her legs while sitting and Dr. Ringdahl did not say that plaintiff needed this limitation. Id.

On February 2, 2009, a Social Security Administration physician, Dr. Syd Foster, reviewed plaintiff's medical record and found her residual functional capacity limited to sedentary work because she could stand and walk at least two hours and sit about six hours in an eight-hour workday. AR 939-44; Social Security Ruling 96-9P at *3 (defining sedentary work as standing and walking no more than two hours and sitting about six hours in a normal workday). He noted that plaintiff's magnetic imaging studies supported his conclusions, AR 940, and that plaintiff's complaints were credible "given her objective presentation to her MD." AR 944.

OPINION

A.  Treating Physician

Although plaintiff's treating physician, Dr. Ringdahl, submitted three opinions between 2005 and 2009 concerning plaintiff's limitations, the administrative law judge gave only some weight to the January 2009 opinion and little weight to the 2005 and 2006 opinions, AR 1096-97, and failed to explain why he did so.  An administrative law judge must offer "good reasons" for discounting the opinion of a treating physician and build a logical bridge from the evidence to his conclusion.  Roddy v. Astrue, 705 F.3d 631, 636 (7th Cir. 2013); Martinez v. Astrue, 630 F.3d 693, 698 (7th Cir. 2011).  "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion."  Moss v. Astrue, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527).  See also 20 C.F.R. § 416.927(c) (outlining same factors for supplemental security income).

The administrative law judge gave the following reasons for discounting the 2005 and 2006 opinions:  (1) they were not supported by Dr. Ringdahl's physical examinations of plaintiff or her magnetic resonance imaging studies; and (2) they were inconsistent with plaintiff's daily activities, which included household chores, caring for a toddler, driving, shopping, walking and cooking.  AR 1096.  However, he provided no further explanation of his opinion.  As plaintiff argues, the administrative law judge failed to identify what

limitations he found inconsistent with the medical record or plaintiff's daily activities and did not explain the inconsistencies. He also did not consider most of the factors outlined in 20 C.F.R. §§ 404.1527(c) and 416.927(c) in his brief discussion of Dr. Ringdahl's opinions.

The administrative law judge stated that he found the 2009 opinion more believable because Dr. Ringdahl specifically noted that plaintiff's magnetic resonance imaging study results and range of motion deficits supported his findings. AR 1097. This rationale is questionable because Dr. Ringdahl stated expressly that he based all three of his opinions on plaintiff's 2004 magnetic resonance imaging studies. It is unclear why the administrative law judge would credit the 2009 opinion and not the 2005 and 2006 opinions on that ground. He also stated that the 2009 opinion showed that plaintiff had a "greater physical capacity" than she did in 2005 and 2006 and that the opinion was consistent with a limitation to sedentary work, but both these statements are incorrect. The 2009 opinion had a more restrictive standing, walking and sitting limitation (four hours a day) than the 2005 and 2006 opinions (six hours a day), and sedentary work requires six hours of sitting in eight-hour workday. SSR 96-9P at *3.

The administrative law judge may have assumed that Dr. Ringdahl's 2009 opinion supported a finding of sedentary work because it did not include the previously found limitation requiring plaintiff to elevate her legs on a regular basis. However, unlike the questionnaires that Dr. Ringdahl completed in 2005 and 2006, the 2009 musculoskeletal questionnaire did not ask about plaintiff's need to elevate her legs. Therefore, it is unclear

whether Dr. Ringdahl changed his assessment of plaintiff's leg elevation limitation between 2006 and 2009 or merely failed to include it because the form did not ask about it.  In any event, the administrative law judge failed to explain what consideration, if any, he gave to the leg elevation restriction that Dr. Ringdahl imposed in 2005 and 2006 and why he may have discounted it.  (As explained in the next section of this opinion, the administrative law judge gave little credence to plaintiff's testimony that she had to sit in a recliner and elevate her legs on a regular basis because of her swollen knees and back problems.  Although he may believe that Dr. Ringdahl based the leg elevation restriction solely on plaintiff's subjective complaints, he did not say that or point to any evidence in the record that would support such a conclusion.)

Finally, the administrative law judge seems to have adopted the opinion of Dr. Foster, the state agency physician who found that plaintiff could do a full range of sedentary work. AR 1097.  (Defendant points out that the administrative law judge generally cited portions of the medical record containing the opinions of two other reviewing physicians.  Because the administrative law judge did not mention those physicians by name or discuss their specific findings, I have not considered them in reviewing his decision.  Id.)  Apart from referring to the opinions of Dr. Foster and Dr. Ringdahl, the administrative law judge never addressed the conflict between the two physicians or explained why Dr. Foster's opinion should be given more weight than Dr. Ringdahl's.

The administrative law judge should have known that he needed to justify his decision regarding the relative weight to give the medical opinions.  In his written decision,

he quoted this court's 2012 remand order, in which I noted that Administrative Law Judge Pleuss had committed the same mistake, noting the physicians' differing opinions but not explaining why he chose one over the other. AR 1096 (citing dkt. #20 at 9-10, case no. 11-cv-368-bbc).

In sum, because the administrative law judge did not give an adequate explanation of his reasons for rejecting the limitations assessed by plaintiff's treating physician in favor of the opinion of the state agency reviewing physician, I must remand this case a third time for further consideration. This time, the administrative law judge should provide sound reasons for rejecting Dr. Ringdahl's opinions and evaluate those opinions using the checklist of factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c).

## B. Credibility Determination

At the 2013 hearing, plaintiff testified that between 2003 and 2009, she had to elevate her feet for about 30 minutes every day because she had swollen knees and back problems. AR 1285, 1293. She stated that sitting in a recliner was the best position for her because it prevented her knees from swelling. AR 1294. (Plaintiff made similar statements during her testimony at the earlier hearings. AR 580-82 and 1044-45.) Although the administrative law judge found some of plaintiff's testimony credible, he concluded that her testimony about needing to spend most of the day in a recliner and elevate her legs to waist level on a regular basis was not supported by the objective evidence or her daily activities. AR 1095. Because I am remanding this case on other grounds, it is unnecessary to analyze

whether the administrative law judge committed reversible error in assessing plaintiff's credibility.  However, I will identify some areas that the administrative law judge may want to reconsider on remand.

The administrative law judge wrote that "the record has only one instance of medical advice to the claimant to elevate her legs" and it was related to a "transient episode of cellulitis in November 2003." AR 1095.  He stated that there was no evidence that any of plaintiff's other impairments required leg elevation.  Id.  However, as discussed above, Dr. Ringdahl recommended in 2005 and 2006 that plaintiff elevate her legs 12-18 inches. Following a physical examination on March 4, 2005, Dr. Ringdahl noted that plaintiff had trace bilateral edema (swelling of the feet and ankles).  AR 506.  Although he did not repeat this recommendation in completing the 2009 questionnaire, that questionnaire did not ask about the need for plaintiff to elevate her legs.  Therefore, on remand, the administrative law judge should take care to consider all of the evidence related to plaintiff's edema and need to elevate her legs, including the fact that Dr. Ringdahl twice recommended leg elevation for plaintiff during the relevant period of alleged disability.

The administrative law judge also did not believe that plaintiff spent most her day in a recliner because she had written on a 2004 daily activities questionnaire that she was able to do light housecleaning, make meals, get her son off to school, change her grandchild's diapers, drive, shop and visit friends and family.  AR 1095 (citing AR 106-11).  He pointed out that plaintiff's daughter reported in 2004 that plaintiff was able to clean the house, attend to personal hygiene, "keep things going smoothly," tend to the family dog, make

simple meals, dust and vacuum once a week, drive, shop and lift 10 pounds.  Id. (citing AR

114-20).  However, plaintiff explained in the 2004 questionnaire that she cleans "little by

little" and that cleaning has taken more time because she has to sit down more often.  AR

107.  Plaintiff also made clear in her hearing testimony that she has to alternate any activity

with sitting in her recliner with her feet up and that she has more bad days than good days.

AR 581-82, 586-87, 1285-86, 1290-93.  Plaintiff's daughter similarly qualified her responses

by explaining that plaintiff "tries" to do "some" cleaning but that she is in pain everyday and

can not handle too much activity.  AR 116-21.  Further, the administrative law judge found

that plaintiff had a degenerative back impairment, which implies that she suffers from a

condition that will get worse over time.  Roddy, 705 F.3d at 637.  Therefore, it is reasonable

to conclude that plaintiff's daily activities became even more limited after 2004, as she

stated in her hearing testimony.

Although an administrative law judge may consider a claimant's daily activities when

assessing credibility, he must be careful not to equate the ability to do some housework with

the ability to perform full-time work.  Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012)

("The critical differences between activities of daily living and activities in a full-time job are

that a person has more flexibility in scheduling the former than the latter, can get help from

other persons . . . and is not held to a minimum standard of performance, as she would be

by an employer.").  On remand the administrative law judge should avoid questioning

plaintiff's credibly simply by listing relatively easy tasks that the plaintiff can perform under

some circumstances or with substantial rest breaks.  If he believes that a particular activity

is inconsistent with the medical evidence or a stated limitation (such as sitting in a recliner),

the administrative law judge should discuss it specifically and explain his reasoning.

The administrative law judge stated that although plaintiff alleged disabling knee and

back impairments, she had very conservative treatment because she never had back surgery

or injections for pain.  AR 1095.  However, he points to no evidence in the record that any

physician believed that plaintiff would have even been a candidate for back surgery or that

surgery or injections would have resolved the disabling nature of plaintiff's conditions.

Further, as plaintiff notes, she underwent knee surgery and took prescription medication for

her knee and back pain.  Although conservative treatment may indicate that plaintiff's

symptoms are not as severe as she alleges, the administrative law judge did not give

persuasive reasons for concluding that plaintiff had "very conservative treatment."


## C.  Obesity

Plaintiff contends that the administrative law judge failed to consider the impact that

her morbid obesity has on her other impairments.  Goins v. Colvin, 764 F.3d 677, 681 (7th

Cir. 2014) (obesity is added handicap for someone who has degenerative disc disease).  The

administrative law judge concluded that plaintiff's obesity was a severe impairment and

specifically mentioned it in his opinion but determined that she was capable of performing

limited sedentary work.  However, he did not specifically address the effect of obesity on

plaintiff's limitations, as he was required to do.  Browning v. Colvin, 766 F.3d 702, 706-07

(7th Cir. 2014); SSR 02-1P ("As with any other impairment, we will explain how we reached

our conclusions on whether obesity caused any physical or mental limitations."). "[T]his type of error may be harmless when the [residual functional capacity assessment] is based on limitations identified by doctors who specifically noted obesity as a contributing factor to the exacerbation of other impairments." Pepper v. Colvin, 712 F.3d 351, 364-65 (7th Cir. 2013). As defendant points out, the administrative law judge relied on the opinion of Dr. Foster, who noted obesity as plaintiff's secondary diagnosis, AR 939, 1097, and noted without discussion that other state agency consulting physicians found plaintiff capable of sedentary work. AR 1097. A quick review of the record shows that those physicians also considered plaintiff's obesity. AR 266-73, 341-48 and 423-30. Although Dr. Foster's opinion is probably sufficient to meet the requirements of SSR 02-1P, the administrative law judge should make clear on remand which physician opinions he is relying on and whether those physicians considered plaintiff's obesity as a contributing factor.


ORDER

IT IS ORDERED that plaintiff Glenann L. Yahnke's motion for summary judgment is GRANTED and this case is REMANDED to defendant Commissioner of Social Security,

pursuant to sentence four of 42 U.S.C. § 405(g).  Judgment is to be entered in favor of

plaintiff.

Entered this 6th day of July, 2015.

                                    BY THE COURT:
                                    /s/
                                    BARBARA B. CRABB
                                    District Judge